# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.           ) | Criminal Action No. 06-306-3 (TFH) |
| ) | **FILED** |
| CHRISTOPHER FLEMING, ) | |
| ) | NOV - 8 2006 |
| Defendant. ) | |
| ) | NANCY MAYER WHITTINGTON, CLERK |
| | U.S. DISTRICT COURT |

## DETENTION ORDER

Before the Court is the appeal of the United States pursuant to 18 U.S.C. § 3145(a)

for review of the Magistrate Judge's decision to release Defendant Christopher Fleming pending trial

in Criminal Action No. 06-301-03 (TFH).  On October 23, 2006, the counsel for the Government

and for Mr. Fleming appeared to argue the appeal, but Mr. Fleming was not present because he was

detained in Maryland in connection with an arrest warrant from that jurisdiction. The Court

continued the hearing for three days and, on October 26, 2006, Mr. Fleming appeared and the Court

heard argument by both parties.  Based on the record, the Court determined that no condition or

combination of conditions for Defendant's release will reasonably assure the safety of the

community and ordered him held without bail.  This memorandum states the Court's reasoning.

### I. BACKGROUND

Mr. Fleming was first presented to the Magistrate Judge on October 2, 2006, pursuant

to a complaint filed by the Government on September 27, 2006 which alleged that Mr. Fleming,

together with codefendants Michael Richards and Russeline Miles, sold cocaine base (also known

as crack) to undercover police officers on four separate occasions at the same location in Northeast

Washington, D.C. At the hearing, the Government asked the Magistrate Judge to order that Mr.

Fleming be held without bail. The Magistrate Judge denied the Government's request and instead

placed Defendant in a High Intensity Supervision program with a stay-away order from the offense

location. On October 12, 2006, a federal grand jury indicted Mr. Fleming and his codefendants on

six counts stemming from the alleged distribution of crack in the District of Columbia. Based on

the indictment, the Government again asked the Magistrate Judge to hold Mr. Fleming without bond

pending trial and, on October 19, 2006, the Magistrate Judge again denied the Government's request.

The Magistrate Judge reasoned that nothing in the new indictment changed her initial assessment

that Mr. Fleming could be released into the High Intensity Supervision program without creating

flight risk or a danger to the community. The Government filed this timely motion for review of the

Magistrate Judge's order.

## II. LEGAL STANDARD

The Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.*, requires that a judicial officer

hold a hearing regarding the pre-trial detention of a criminal defendant "upon motion of the attorney

for the Government in a case that involves . . . an offense for which a maximum term of

imprisonment of ten years or more is prescribed in the Controlled Substances Act . . . ." 18 U.S.C.

§ 3142(f)(1)(C). The Bail Act further requires the pre-trial detention of those defendants who, after

an adversary hearing, are determined to be a flight risk or a danger to persons or the community:

> If, after a hearing pursuant to the provisions of subsection (f), the judicial officer
> finds that no condition or combination of conditions will reasonably assure the
> appearance of the person as required and the safety of any other person and the
> community, he shall order the detention of the person prior to trial.

*Id.* at § 3142(e).

-2-

In deciding whether there are conditions of release that would reasonably eliminate the risk of flight and danger to the community, the judicial officer must consider "the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance"; "the weight of the evidence against the" defendant; the defendant's "history and characteristics," including community ties, criminal history, and parole status; and "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." *Id.* § 3142(g); *see also U. S. v. Salerno*, 481 U.S. 739, 742-43 (1987). If, after assessing these factors, the judicial officer finds probable cause that the defendant committed an offense that carries a maximum term of imprisonment of ten years or more under the Controlled Substances Act, there is a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community . . . ." *Id.* § 3142(e).

At the detention hearing, both the Government and the defendant may proceed by proffer. *See U.S. v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). If "the judicial officer finds that no conditions of pretrial release can reasonably assure the safety of other persons and the community, he must state his findings of fact in writing, § 3142(I), and support his conclusion with 'clear and convincing evidence.' § 3142(f)." *Salerno*, 481 U.S. at 742; *see also U.S. v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988).

## III. ANALYSIS

In the present case, the question is whether there is any condition or combination of conditions that will reasonably assure the safety of the community if

-3-

Defendant is released pending trial. First, the Court must consider the nature of the offenses with which Defendant is charged. Defendant is charged with multiple violations of the Controlled Substances Act— specifically, he is charged with distributing, and aiding and abetting the distribution of, 50 grams or more of crack in violation of 21 U.S.C. § 841, as well as the unlawful maintenance of a premises to manufacture, store, and distribute crack in violation of 21 U.S.C. § 856. Thus, Defendant is charged with drug trafficking crimes under the Controlled Substance Act for which a maximum term of imprisonment of ten years or more is prescribed. *See* 21 U.S.C. § 841(b)(1)(A)(iii).

Second, the Court must consider the weight of the evidence against Defendant. The Government explained the strength of its case against Mr. Fleming by proffer, which was not challenged by Defendant. According to the Government's proffer, undercover officers ("UCs") working for the Metropolitan Police Department's Narcotics and Special Investigations Division ("NSID") purchased crack from Defendants Richards, Miles, and Fleming on four separate occasions. Each purchase was made at or near 65 Hawaii Avenue, N.E., Washington, D.C., where NSID believes that Defendants were operating a major crack manufacturing and distribution operation out of an apartment that is leased to Mr. Fleming.

On August 18, 2006, a UC purchased approximately 61 grams of crack from the three codefendants for $2,400 in U.S. currency. A second buy was set up directly with Mr. Richards via a recorded telephone call for the purchase of 62 grams of crack. On August 29, 2006, while the UC was on a recorded telephone call with Mr. Richards, Defendants Miles and Fleming came out of 65 Hawaii Avenue and got into the UC's

parked vehicle. While on the recorded telephone call, Mr. Richards assured the UC that it was safe to deal with Defendants Miles and Fleming because they were "family." At that point, Mr. Fleming allegedly handed 60 grams of crack cocaine to the UC, and the UC gave Defendant Miles $2,400. Two additional buys from the three Defendants were allegedly made directly from the Hawaii Avenue apartment on September 22 and September 26, 2006.

Finally, on September 26 at approximately 7 p.m., NSID sought to execute a search warrant it had obtained for the Hawaii Avenue apartment. An arrangement for the purchase of 62 grams of crack had been made with Mr. Richards via a recorded telephone call. When NSID arrived, the three Defendants were standing outside the building. Based on the facts of its investigation, NSID sought to detain them. Ms. Miles allegedly told the police spontaneously that she had a large quantity of crack hidden in her bra and confessed that the three co-defendants had been distributing crack together for approximately 18 months. Search incident to the arrest of Mr. Richards disclosed $686 and four ziplock bags each containing $10 worth of crack. The ziplocks recovered from Mr. Richards allegedly matched empty ziplocks that were found inside the apartment leased to Mr. Fleming.

Third, the Court must consider Mr. Fleming's history and characteristics. On this factor, the Court finds it most significant that Mr. Fleming is clearly addicted to crack. One of the conditions placed on Mr. Fleming under the High Intensity Supervision program is weekly drug testing, and Mr. Fleming has tested positive more than once. The Court also notes that Mr. Fleming has been charged with at least one drug-related offense in Maryland, and may have been on release in connection with the Maryland offense when

he engaged in the criminal conduct that led to his arrest on September 26, 2006 and the subsequent indictment against him.[1]

Based on the Government's proffer, this Court finds there to be probable cause that Defendant committed a crime for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act. There is clear evidence that, on August 29, 2006, Mr. Fleming handed 61 grams of crack to a UC in exchange for $2,400. There is also evidence that Mr. Fleming leased the apartment from which he and his codefendants operated their crack distribution operation. In short, the Court finds that the Government has demonstrated probable cause that Mr. Fleming actively distributed, and aided and abetted the distribution of, large amounts of crack on Hawaii Avenue in Northeast Washington, D.C. Therefore, this Court finds there to be a presumption that there is no condition or combination of conditions that will reasonably assure Mr. Fleming's appearance or the safety of the community. *See* 18 U.S.C. § 3142(e).

Because the statutory presumption in favor of pre-trial detention is triggered here, it falls upon Defendant to demonstrate that the relevant factors show that he is neither a flight risk nor a danger to the community. Counsel for Mr. Fleming argued that Mr. Fleming has ties to the community, and that his mother will allow him to live with her in

---

[1] At the hearing, the Government argued that the Court should take into consideration the fact that Mr. Fleming failed to appear for a hearing in Maryland, which led his arrest and his inability to attend the hearing in this Court on October 23. But counsel for Mr. Fleming represented that Mr. Fleming failed to appear for the Maryland hearing because he was detained by the U.S. Marshals in connection with the indictment in this case and, despite her attempts to have him released so he could attend the hearing in Maryland, he was erroneously detained in the District of Columbia. The Court accepts defense counsel's representation and does not consider Mr. Fleming's failure to appear in Maryland in connection with the present motion.

Prince George's County, Maryland, until the charges against him are resolved. Counsel also argued that Mr. Fleming is directly implicated in only one of the four narcotics transactions detailed in the indictment; and while he did lease the apartment on Hawaii Avenue, no drugs were found in the apartment (or on Mr. Fleming's person) at the time of the search and arrest on September 26. In short, Mr. Fleming contends that the High Intensity Supervision Program, as ordered by the Magistrate Judge, is sufficient to protect the community and guard against any risk of flight.

The Court finds that Mr. Fleming has failed to overcome the statutory presumption against him. The offenses with which Mr. Fleming is charged are serious. Crack is lethal in the District of Columbia; it destroys the lives of those who become addicted, and it destroys the lives of their entire families. The charges and the evidence indicate that in addition to selling significant quantities of crack into the community, Mr. Fleming has maintained an apartment in which crack has been manufactured and distributed. And even though Mr. Fleming is alleged to have directly sold crack only once, he is charged with aiding and abetting the other three sales alleged in the indictment. Moreover, it is quite clear that Mr. Fleming is seriously addicted to crack. It is no secret that crack is a powerful addiction, and will drive even well-intentioned people to engage in criminal behavior. Mr. Fleming has already shown that he will not hesitate to engage in criminal conduct in order to feed his addiction.

In addition to the Government's proffer, the Court accepted into evidence the videotaped confession of Russeline Miles, who told police that she, Mr. Richards, and Mr. Fleming had sold crack out of the apartment house at 65 Hawaii Avenue N.E. for the

-7-

18 months immediately prior to their arrests. Significantly, Ms. Miles confessed that recently five kilograms of powder cocaine had been brought to Mr. Fleming's apartment, some of which Mr. Richards cooked into crack to be sold from that location. Ms. Miles's confession suggests that Mr. Fleming is involved in a fairly extensive network of drug dealers involving significant quantities of cocaine. That the conspiracy stretches back at least a year and a half — and apparently involved significant quantities of cocaine — underscores the Government's representation that Mr. Fleming is a serious danger to the community. *Cf. Peralta*, 849 F.2d at 626-27 (affirming the district court's finding that a defendant who was arrested with one kilogram of cocaine was properly subject to pretrial detention under 18 U.S.C. § 3142(e)).

Mr. Fleming argues that the five kilograms referred to by Ms. Miles in her confession were "not related" to Mr. Fleming. Although it is true that Ms. Miles does not indicate that Mr. Fleming participated in the transport of or payment for the five kilograms of cocaine, Ms. Miles is clear that those narcotics were brought to Mr. Fleming's apartment on Hawaii Avenue She is also clear that a large quantity of that cocaine was cooked into crack in Mr. Fleming's apartment. Thus, while Mr. Fleming might be a "minor" player in the conspiracy, he is nonetheless an integral player.[2]

Based on the foregoing, the Court finds by clear and convincing evidence that Mr. Fleming — a crack addict and dealer facing a lengthy federal prison sentence —

---

[2] The Court recognizes that Ms. Miles's confession may not be admissible against Mr. Fleming at trial, and that Ms. Miles has a criminal history that calls her credibility into question. But neither can Ms. Miles's statements be ignored. Thus, the Court has not considered Ms. Miles's confession in assessing the weight of the Government's evidence; it has considered the confession only with respect to Defendant's history, characteristics, and dangerousness.

presents both a flight risk and a danger to the community, and that no condition or combination of conditions of release would reasonably alleviate those dangers. The Court therefore orders that Mr. Fleming be detained pending trial pursuant to 18 U.S.C. § 3142(e).

**SO ORDERED.**

THOMAS F. HOGAN
Chief Judge

DATE: November 7, 2006