**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | **Case No.  06-306-03 (TFH)** |
| | : | |
| **CHRISTOPHER FLEMING,** | : | |
| **Defendant.** | : | **Hearing Date:  March 23, 2007** |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR**
**MODIFICATION OF PRETRIAL DETENTION ORDER**

*COMES NOW*, the United States of America, by and through its Attorney, the United States

Attorney for the District of Columbia, respectfully to oppose Defendant's motion for modification

of pretrial detention order in Criminal Case Nos. 06-306-03 (TFH).  In support whereof, we submit

as follows:  The record shows that no condition nor combination of conditions for defendant's

release will reasonably assure the safety of the community.  Reform Act, 18 U.S.C. § 3142(f)(1)©.[1]

That law presumes that persons should be jailed pending trial when charged with the crimes for

which defendants have been indicted.  The Defendant now claims that since he has been held without

bond prior to trial he has now completed a drug treatment program and should now be release to the

custody of his mother and electronic monitoriing.  Still, the Defendant presents a danger to the

community because has the ability to traffic large amounts of narcotics via the telephone and

_____

[1] 18 U.S.C. § 3142(f)(1)(C), authorizes pre-trial detention in any case involving a crime under
the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, carrying a maximum penalty of ten years
or more in prison.  All of the crimes charged in Defendant Fleming's indictment carry such penalties.

distribute narcotics from secure and secreted locations which required substantial law enforcement efforts to uncover.

Statement of Fact

On August 18, 2006, the Metropolitan Police Department's Narcotics and Special Investigations Division (MPD/NSID), Unit while conducting undercover narcotics operations, in the high crime area of 65 Hawaii Avenue, Northeast, Washington, D.C., purchased approximately 61 grams of cocaine base from these coconspirators for $2,400.00, in U.S. currency. Specifically, the purchase was made directly hand-to-hand from Defendant Richards, who transferred the 61 grams of cocaine base to the undercover officer, in exchange for $2,400.00, in U.S. currency. However, at the direction of Defendant Miles, Defendant Richards gave her the $2,400.00, that the undercover officer had paid Defendant Richards for the cocaine base that he received contemporaneously from Defendant Richards. Undercover investigation demonstrates that Defendants Richards, Miles and Fleming, utilized Apartment No. 202, 65 Hawaii Avenue, Northeast, Washington, D.C., to store and sell cocaine base from January 2006 through September 2006 based on evidence gained by the MPD NSID Unit.

On August 29, 2006, the Metropolitan Police Department's Narcotics and Special Investigations Division (NSID) conducted a narcotics operation in the high crime area of 65 Hawaii Avenue, Northeast, Washington, D.C. The NSID had identified Defendants and coconspirators Michael Richards, Russeline Miles and Christopher Fleming as major cocaine base, also known as crack distributers in Northeast Washington, D.C. On August 29, 2006, at approximately, 6:30 p.m., the NSID, conducted an undercover narcotics operation which had been set-up directly with Defendant Richards via a recorded telephone call for the purchase of 62 grams of cocaine base. At

approximately, 7:30 p.m., an undercover officer (UC) met with Defendants Michael Richards, Russeline Miles and Christopher Fleming, in the front of 65 Hawaii Avenue, Northeast, Washington. While the UC was on a recorded telephone call to Defendant Richards, Defendants Miles and Fleming came out of 65 Hawaii Avenue. Defendant Fleming sat in the back of the UC vehicle, and Defendant Miles sat in the front and she advised that Defendant Richards was inside 65 Hawaii Avenue watching the cocaine base transaction. While still on the recorded telephone call with Defendant Richards, he assured the UC that it was save to deal with Defendants Miles and Fleming, by stating that they were "family." Accordingly, Defendant Fleming handed the UC 60 grams of cocaine base which concealed inside a black plastic bag. The UC then gave Defendant Miles, $2,400.00, in U.S. currency. Defendant Miles openly counted the money and both Defendants Miles and Fleming exited the UC vehicle.

On September 22, 2006 and September 26, 2006, undercover purchases of cocaine base where made directly from Apartment No. 202 from Defendants Richards, Fleming and Miles. The NSID obtained a District of Columbia Superior Court search warrant for Apartment No. 202, which is leased by Defendant Fleming.

On September 26, 2006, at approximately, 7:00 p.m., the NSID sought to execute the search warrant it had obtained for Apartment No. 202. Additionally, the NSID had set-up a deal for 62 grams of cocaine base via a recorded telephone call to Defendant Richards. Upon their arrival, Defendants Richards, Miles, and Fleming were all standing outside of the building. The NSID based on the facts of investigation sought to detain the three defendants. Defendant Miles spontaneously told the police that she had a large quantity of cocaine base in her upper undergarment and confessed that she and Defendants Richards and Fleming had been distributing cocaine base together for

approximately 18 months.  Search incident to arrest of Defendant Richards disclosed $686.00, in

U.S. currency and 4 $10.00 ziplocks of cocaine base which ziplocks matched the numerous empty

ziplocks which were seized from inside Apartment No. 202, which apartment was leased by

Defendant Fleming.  All the substances seized and purchased during this undercover cocaine base

investigation field-tested positive for cocaine.

### ARGUMENT

Congress clearly expressed it's intent when it enacted the current version of the Bail Reform

Act:

> Many of the changes in the Bail Reform Act reflect the . . . determina-
> tion that Federal bail laws must . . . give the courts adequate authority
> to make release decisions that give appropriate recognition to the
> danger a person may pose to others if released. . . .   The constraints
> of the Bail Reform Act fail to grant the Courts the authority to impose
> conditions of release geared toward assuring community safety, or the
> authority to deny release to those defendants who pose an especially
> grave risk to the safety of the community.  . . . ***This broad base of
> support for giving judges the authority to weigh risks to community
> safety in pretrial release decisions is a reflection of the deep public
> concern, which the Committee shares, about the growing problem
> of crimes committed by persons on release.***

See S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S.Code Cong. & Ad.News 3182, 3486-3487. (Emphasis added.)[2]

---

Regardless of why the government sought a detention hearing, the Court always must consider whether defendant's release is a danger to the community.  This point is made throughout the Bail Reform Act.  Section 3142(e), which authorizes detention without bail pending trial, states:

> If, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds
> that no condition or combination of conditions will reasonably assure the appearance of the person as
> required ***and the safety of any other person and the community***, such judicial officer ***shall order*** the
> detention of the person before trial.

Emphasis added.  Similarly, § 3142(f) states:

> The judicial officer shall hold a hearing to determine whether any condition of combination of
> conditions set forth in subsection (c) of this section will reasonably assure the appearance of such

No condition of release or combination of them can ensure that defendants will not pose a danger to the community if released.  This is based first upon the presumption to that effect written into the Bail Reform Act.  18 U.S.C. § 3142(e) ("Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions of release will reasonably assure the  . . . safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act.").  This presumption, triggered by defendants' indictment, is re-enforced overwhelmingly by the facts of their case.

Similarly, § 3142(f) states:

> The judicial officer shall hold a hearing to determine whether any condition of combination of conditions set forth in subsection © of this section will reasonably assure the appearance of such person *and the safety of any other person and the community* –
>
> (1) upon motion of the attorney for the Government, in a case that involves,

---

person *and the safety of any other person and the community* –

(1) upon motion of the attorney for the Government, in a case that involves,

(C) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 *et seq*.) . . .

Emphasis added.  This point is again made in § 3142(g), **Factors to be considered**, which states:

The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required *and the safety of any other person and the community*, take into account the available information concerning –

(1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
(2) the weight of the evidence against the person;
(3) the history and characteristics of the person . . .
(4) *the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .*
(Emphasis added.)

> (A) a crime of violence . . .

> (2) Upon motion of the attorney for the Government or upon the judicial officer's own motion, in a case that involves –

> (A) a serious risk that such person will flee . . . .

Emphasis added.

This point is again made in § 3142(f), **Factors to be considered**, which states:

> The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required ***and the safety of any other person and the community***, take into account the available information concerning –

> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

> (2) the weight of the evidence against the person;

> (3) the history and characteristics of the person . . .

> (4) ***the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .***

(Emphasis added.)  Thus, at all times, the issue of defendant's danger to the community if released should be at the forefront of the Court's thinking when ruling on pre-trial detention.

A.  *Defendant is in the drug trade, and is a threat to return to it if released*:

The facts of this case demonstrates the danger that Defendant's release poses.  As the legislative history of the 1984 Bail Reform Act amendments shows:

> [T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community.  The committee intends that the concern about safety be given a broader construction than merely danger of harm involving violence. . . .  The Committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking

constitutes a danger to the "safety of any other person or the community.

S.Rep. No. 225, *supra*, at 3195-3196.

*B. Defendant's crimes implicate both danger to the community and the risk of flight*:

Defendant Fleming's crimes directly implicates both the risk of danger to the community and of flight. The rationale for detaining an individual is the fear that he will not obey an order to return to court or to obey the law. The release of any defendant must, therefore, be predicated on the Court's belief that its order will be obeyed. A potent sign that Defendant Fleming cannot be trusted to obey any order of the court, including an order to return to court when required. "As in any human endeavor, what is past is prologue and there can be no better evidence bearing on whether the defendant will appear when required than whether he has appeared when required in the past *and has been faithful to the conditions of his conditional release, probation, or parole*." United States v. Battle, 59 F.Supp.2d 17, 20 (D.D.C. 1999) (emphasis added), Facciola, MJ., citing United States v. Robinson, 27 F.Supp.2d 1116 (S.D.Ind. 1998) "[A]scertaining whether a defendant presents a serious risk of flight requires inquiry into his behavior when released previously on conditional release, probation, or parole." United States v. Battle, supra, id. Consequently, release of Defendant Fleming raises an exceptionally severe risk of danger and flight. Every time he sold drugs to an undercover officer, he essentially was thumbing his nose at the Judge in the Superior Court and Salisbury, Maryland to whom he gave a solemn oath that he would commit no crime while released. The Government submits that Defendant Fleming's overall picture is of a person who calculatedly, persistently, and flagrantly breaking his bail, his word to the Court, and the criminal law. Defendant Fleming must be deemed to give no more thought to the value of his oath to the Court than to the

consequences of his illegal narcotic trafficking for the drug-addled addicts, like himself, upon whom his crimes prey.

Defendant Fleming's release is equally fraught with peril to the community. In virtually each instance he utilized telephones, stealth, cover and concealment, and insulated himself with go-betweens to sell his crack. Indeed, Defendant Fleming has shown plainly that he will do what he will to this community. And, in this case, it is not just the community at large, nor some remote place, but the very neighborhood closest to him. Against these facts, Defendant Fleming principally relies for his release on community ties to overcome the presumption that he should be held pending trial. Again, the framers of the 1984 Bail Reform Act thought differently. "The Committee also notes with respect to the fact of community ties that it is aware of the growing evidence that the presence of this factor does not necessarily reflect a likelihood of appearance, and has no correlation with the question of the safety of the community." S.Rep. No. 225, supra, 3207. Nor is it clear why community ties, which stopped Defendant not at all from selling drugs as described above, now will keep them from doing so again.

In summary, Defendant Fleming's release would constitute a clear and convincing danger to the community. Additionally, we believe that it is not within the interests of justice for the United States to potentially allow a foreign state jurisdiction to obtain control of Defendant Fleming and thereby potentially allow for a defacto severance of defendants due to Defendant Fleming's prosecution in Salisbury, Maryland.

The Bail Reform Act of 1984, 18 U.S.C. sec. 3141 et seq. (Hereinafter "the Act"), provides, in pertinent part, that if a judicial officer finds by clear and convincing evidence that "no condition or combination of conditions [of release] will reasonable assure . . . the safety of any other person

and the community, such judicial officer shall order the detention of the [defendant] before trial."

18 U.S.C. sec. 3142(e). Thus, danger to the community alone is a sufficient basis upon which to

order pretrial detention. United States v. Salerno, 481 U.S. 739, 755 (1987); United States v.

Simpkins, 826 F.2d 94, 98 (D.C. Cir. 1987). We submit, that Defendant Fleming also represents a

risk of flight too based on his pending cases in foreign jurisdictions and the substantial penalty of

incarceration in this case. United States v. Alatishe, 768 F.2d 364, 371 (D.C. Cir. 1985).

Accordingly, based on the clandestine nature of Defendant Fleming's substantial and long standing

crimes we conclude and urge this Court to find that Defendant Fleming should continue to be held

without bond in this case.

WHEREFORE, the United States respectfully prays this Honorable Court to order Defendant

held without bail pending trial..

Respectfully submitted,

JEFFERY A. TAYLOR
UNITED STATES ATTORNEY
D.C. BAR NO. 498-610

By: _____

MARTIN DEE CARPENTER
Assistant United States Attorney
Organized Crime and Narcotics Trafficking Section

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of this pleading has been mailed, postage prepaid, this 28th day of February, 2007, to counsel for Defendant Fleming, Danielle Jahn, Esquire, by electronic filing and by Facsimile (202) 208-7501, and by electronic filing to:

Attorney Danielle C. Jahn
Email: dani_jahn@fd.org

Attorney Brian K. McDaniel
Email:  kbmassociates@aol.com

Attorney Joanne D. Slaight
Email: jslaight@att.net

<div style="margin-left:45%">

_____

MARTIN DEE CARPENTER, Bar No. 431-211
Assistant United States Attorney
Organized Crime & Narcotics Trafficking Section
555 4th Street, N.W., Room No. 4116
Washington, D.C.  20530
(202) 514-7063

Email: martin.carpenter2@usdoj.gov

</div>