## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| v. | : | **Case No.  06-306  (EGS)** |
| | : | |
| **MICHAEL DANIEL RICHARDS, Et. Al.** | : | |
| **Defendant.** | : | **Hearing Date:  June 21, 2007** |

### GOVERNMENT'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS

*COMES NOW*, the United States of America, by and through its Attorney, the United States Attorney for the District of Columbia, to respectfully oppose Defendants Richards', Miles' and Fleming's motion to suppress tangible evidence seized on September 26, 2006; Defendant Miles' motion to suppress statements; Defendant Richard's motion for early disclosure of witnesses; Defendants Richards' and Fleming's motions to sever defendants; and, in support thereof, we submit as follows:

### BACKGROUND

1.  On June 23, 2005, the Grand Jury for the United States District Court for the District of Columbia rendered a three count indictment against Defendants Michael Richards and Donnie Smith, which resulted in Criminal Case No. 05-242, that alleged: In Count One that from December 2001 to May 2002, that they along with others conspired to distribute and possess with the intent to distribute 50 grams or more of cocaine base. Also known as "Crack."  In Count Two that on December 6, 2001, the Richards and Smith aided and abetted one another to distribute 50 grams or more of crack. And, in Count Three that on February 19, 2002, that Richards and Smith aided and abetted one another to distribute more than 5 grams of crack.

Page 1 of  27

2. On October 12, 2006, the Grand Jury for the United States District Court for the District of Columbia rendered a three count indictment against Defendants Michael Richards, Russeline Deniel Miles and Christopher Fleming, which resulted in Criminal Case No. 06-306, that alleged: In Count One that from January 2006 through September 2006, the three defendants aided and abetted one another to unlawfully maintain a premises to manufacture, distribute, store and use crack. In Counts Two and Three, on August 18, 2006 and August 29, 2006, respectively, the three Defendants aided and abetted one another to distribute more than 50 grams of crack. In Counts Four and Five, on September 22, 2006 and September 26, 2006, respectively, the three Defendants aided and abetted one another to distribute a detectable amount crack. And, that on September 26, 2006, the date of their arrests, that the three Defendants possessed with the intent to distribute and aided and abetted each other to illegally possess more than 50 grams of crack.

3. This started out as a DEA investigation that they were developing in 2000, targeting the location, xxxxxxxxxxxxxxxx in November 2000. The Defendant Michael Richards, aka "Wayne," was the primary target of the investigation. On December 6, 2001 at approximately 3:30 p.m., the UC called Richards on 307-3368 and set up the buy for about an hour later. The call was recorded and has been transcribed. At approximately 4:46 p.m., UC and Officer Norris drove to 86 Webster Street NE and park. Donnie Smith talked to them through passenger window. According to the buy report, Smith then went to talk to Richards and motioned the UC over. The OP tape captures Smith talking to the UC in the car. Once in the building, Smith tells the UC to go upstairs. The UC says no and asks where Richards is located. A woman responds he's in Apartment 104 and will be right out. Richards then comes out of Apartment 104 with crack and the Richards and the UC go upstairs

to Apartment 201, which is leased to Donnie Smith. The UC then gives Richards $2400 in exchange for 50.6 grams of crack cocaine.

4. On February 19, 2002, at approximately 4:18 p.m., the UC calls Richards on xxxxxxxxxxxxxxxx[1] and sets up the deal for later that day. The call was recorded and has been transcribed. The UC told Richards to come out to the car because his leg is messed up. At approximately 5:11 p.m., the UC drove up in front of xxxxxxxxxxxxxxxx and Donnie Smith approached the car. The UC asked where Richards was, and Smith pointed to the window and told the UC to lean over and he could see him. The UC then told Smith to get in the car, and he handed Smith $2400 in exchange for 51.4 grams of crack cocaine. The interior car camera catches this all on tape, including the sound, and the quality is very good. There is also an observation video tape.

5. On August 18, 2006, the Metropolitan Police Department's Narcotics and Special Investigations Division (MPD/NSID), Unit while conducting undercover narcotics operations, in the high crime area of xxxxxxxxxxxxxxxx, Washington, D.C., purchased approximately 61 grams of cocaine base from these coconspirators for $2,400.00, in U.S. currency. Specifically, the purchase was made directly hand-to-hand from Defendant Richards, who transferred the 61 grams of cocaine base to the undercover officer, in exchange for $2,400.00, in U.S. currency. However, at the direction of Defendant Miles, Defendant Richards gave her the $2,400.00, that the undercover officer had paid Defendant Richards for the cocaine base that he received contemporaneously from

---

The old number 607-3368 was changed to this new number on the same account, with the same subscriber and subscriber information as before.

Defendant Richards. Undercover investigation demonstrates that Defendants Richards, Miles and Fleming, utilized Apartment No. 202, xxxxxxxxxxxxxxxx, Washington, D.C., to store and sell cocaine base from January 2006 through September 2006 based on evidence gained by the MPD NSID Unit.

6.    On August 29, 2006, the Metropolitan Police Department's Narcotics and Special Investigations Division (NSID) conducted a narcotics operation in the high crime area of xxxxxxxxxxxxxxxx, Washington, D.C. The NSID had identified Defendants and coconspirators Michael Richards, Russeline Miles and Christopher Fleming as major cocaine base, also known as crack distributers in Northeast Washington, D.C. On August 29, 2006, at approximately, 6:30 p.m., the NSID, conducted an undercover narcotics operation which had been set-up directly with Defendant Richards via a recorded telephone call for the purchase of 62 grams of cocaine base. At approximately, 7:30 p.m., an undercover officer (UC) met with Defendants Michael Richards, Russeline Miles and Christopher Fleming, in the front of xxxxxxxxxxxxxxxx, Washington. While the UC was on a recorded telephone call to Defendant Richards, Defendants Miles and Fleming came out of xxxxxxxxxxxxxxxx. Defendant Fleming sat in the back of the UC vehicle, and Defendant Miles sat in the front and she advised that Defendant Richards was inside xxxxxxxxxxxxxxxx watching the cocaine base transaction. While still on the recorded telephone call with Defendant Richards, he assured the UC that it was save to deal with Defendants Miles and Fleming, by stating that they were "family." Accordingly, Defendant Fleming handed the UC 60 grams of cocaine base which concealed inside a black plastic bag. The UC then gave Defendant Miles, $2,400.00, in U.S. currency. Defendant Miles openly counted the money and both Defendants Miles and Fleming exited the UC vehicle.

7.  On September 22, 2006 and September26, 2006, undercover purchases of cocaine base where made directly from Apartment No. 202 from Defendants Richards, Fleming and Miles.  The NSID obtained a District of Columbia Superior Court search warrant for Apartment No. 202, which is leased by Defendant Fleming.

8.  On September 26, 2006, at approximately, 7:00 p.m., the NSID sought to execute the search warrant it had obtained for Apartment No. 202.  Additionally, the NSID had set-up a deal for 62 grams of cocaine base via a recorded telephone call to Defendant Richards.  Upon their arrival, Defendants Richards, Miles, and Fleming were all standing outside of the building.  The NSID based on the facts of investigation sought to detain the three defendants.  Defendant Miles spontaneously told the police that she had a large quantity of cocaine base in her upper undergarment and confessed, amongst other important criminal matters,  that she and Defendants Richards and Fleming had been distributing cocaine base together for approximately 18 months.  Defendant Miles later rendered a detailed video-taped confession.  Search incident to arrest of Defendant Richards disclosed $686.00, in U.S. currency and 4 $10.00 ziplocks of cocaine base which ziplocks matched the numerous empty ziplocks which were seized from inside Apartment No. 202, which apartment was leased by Defendant Fleming.  All the substances seized and purchased during this undercover cocaine base investigation field-tested positive for cocaine.

9.  The oral and video-taped statements rendered by Defendant Miles formed part of the basis for the Honorable Judge Rosemary Collyer to hold Defendants Richards and Flemings without bond pending trial.

10.  On Tuesday, June 5, 2007, the grand jury returned a superseding indictment which extensively combined the 05 and 06 indictments and added additional defendants.

# ARGUMENT

**The Evidence Seized from Defendants' Persons and Apartment No. 2, xxxxxxxxxxxxxxx, N.E., Washington, D.C. was Properly and Lawfully Obtained Since the Police had Probable Cause and a Judicially Authorized Search Warrant.**

The Government submits that the search warrant for Apartment No. 2, xxxxxxxxxxxxxxx, N.E., Washington, D.C., is supported by probable cause and that defendants' motions to suppress should be denied.  See Appendix I.

The United States Supreme Court has noted:

> "Reasonable minds frequently differ on the question whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination."

United States v. Sumler, 924 F. Supp. 249, 250 (D.D.C. 1996) (quoting United States v. Leon, 468 U.S. 897, 914 (1984)).  "'The task of the issuing magistrate is [to] make a practical commonsense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a **fair probability** that contraband or evidence of a crime will be found in a particular place.'" United States v. Whitner, 219 F.3d 289, 296 (3d Cir. 2000) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983); emphasis added).  "[P]robable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of rules."  Gates, 462 U.S. at 232.  "The supporting affidavit must be read in its entirety and in a commonsense and nontechnical manner."  Whitner, 219 F.3d at 296 (quotations omitted).

> "The task of a judicial officer from whom a search warrant is requested is 'to make a practical common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

United States v. Thomas, 989 F.2d 1252, 1254 (D.C. Cir. 1993) (quoting Gates, 462 U.S. at 238).

In this Circuit,

> observations of illegal activity occurring away from the suspect's residence, can support a finding of probable cause to issue a search warrant for the residence, if there is a reasonable basis to infer from the nature of the illegal activity observed, that relevant evidence will be found in the residence.

Thomas, 989 F.2d at 1255. Here, the affidavit supports a reasonable basis to conclude that there was a fair probability that defendant Fleming's home -- defendant Fleming, a defendant in his own right, charged with counts of conspiracy, distribution and PWID cocaine base, and maintaining a "crack house" wherein he sought furthering the goals of the drug distribution organization – might contain relevant evidence related to drug distribution.  Defendants Richards and Miles uses of defendant Fleming's residence as their base of operations creating a fair probability that they kept evidence there.  Clearly, the facts recited in the affidavit established a "fair probability," the requisite standard, that evidence of the crimes charged against defendants Richards, Miles and Fleming would be found at defendant Fleming's apartment.  United States v. Salamanca, 990 F.2d 629, 634 (D.C. Cir.), cert. denied, 510 U.S. 928 (1993).

District Courts in this circuit have stated that "there is no requirement that the premises to be searched be the scene of actual criminal activity."  Sumler, 924 F. Supp. at 251.  "'A magistrate need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit.'"  Id. (quoting United States v. Ocampo, 937 F. 2d 485, 490 (9th Cir. 1991)).

However, here,  "[T]he affidavit sufficiently links the defendant to the premises and explains why evidence would remain at the premises . . ."  United States v. Anderson, 924 F. Supp. 286, 291 (D.D.C. 1995).

**The Leon "Good Faith Exception" Prevents the Suppression of the Evidence**

Even were the Court to find that the affidavit did not support probable cause to search defendant Fleming's residence, even the cases upon which the defendant relies, held that the evidence should not be excluded because the Leon "good faith" exception applied and that the case fell within the "good faith" exception set forth in United States v. Leon, 468 U.S. 897, 913 (1984).

In 1984, the United States Supreme Court established that where a law enforcement officer's good faith reliance on a judge's determination of probable cause was objectively reasonable, "application of the extreme sanction of exclusion is inappropriate." Leon, 468 U.S. at 926.  District courts within this circuit routinely find that the Leon exception prohibits the exclusion of evidence. See Anderson, 924 F. Supp. at 292 ("Finally, the 'good faith' exception established in United States v. Leon, 468 U.S. 897 (1984), would cure any technical flaw in the warrant issued for 1801 28th Place, S.E." (court held affidavit established probable cause to search defendant's residence although defendant engaged in a gun battle nowhere near his home)); Sumler, 924 F. Supp. at 251.  United States v. Pelham, 749 F. Supp. 304, 310 (D.D.C. 1990) ("while Officer Parsi could have drafted a better search warrant and supporting affidavit, he did everything else that reasonably could be expected of him").   Even if the Court were to find that reasonable minds could disagree as to whether the affidavit supports probable cause, it is clear that the officer relied upon the Judge's determination of probable cause in good faith.

**The Searches of the Persons of Defendants Richards and Miles and the Evidence Seized from Them was also Legally Based on Probable Cause Based on a Totality of the Evidence and Circumstances.**

A) The encounter between the defendant Miles and the police was consensual.

Contrary to the claims made in defendant Miles's motion, she was not "seized" within the meaning of the Fourth Amendment when the officers approached her. There is absolutely no requirement for police to have probable cause or even reasonable suspicion in order to approach a person to speak with them. "[A]n encounter between a police officer and a citizen, involving no more than approach, questioning, and official identification, does not constitute a seizure and does not require probable cause, articulable suspicion, or any other kind of objective justification." United States v. Smith, 901 F.2d 1116, 1118 (D.C.Cir. 1990) (quotations and citations omitted). "A seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free 'to disregard the police and go about his business', the encounter is consensual and no reasonable suspicion is required." Florida v. Bostick, 501 U.S. 429 (1991)(citations omitted). See, also, United States v. Maragh, 894 F.2d 415 (D.C.Cir. 1990); United States v. Winston, 892 F.2d 112 (D.C. Cir. 19890; United States v. Carrasquillio, 877 F.2d 73, 76 (D.C.Cir. 1989), citing Florida v. Royer, 460 U.S. 491, 497 (1982). An officer may freely address questions to a private citizen who remains free to ignore questions, to refuse to cooperate, and to go on his way.  Terry v. Ohio, 392 U.S. 1, 32-34 (1968).

The Supreme Court found, in United States v. Hodari D., 111 S.Ct. 1547 (1991), that to constitute a seizure for purposes of the Fourth Amendment, there must be either the application of physical force or submission to an officer's show of authority. Neither occurred here. At no time, prior to her spontaneous admission, did the officers apply physical force to the defendant, and at no

time did the officers demonstrate a sufficient show of authority to constitute a seizure. The test of whether an encounter is an actual seizure or a mere contact, which requires no justification, is whether, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Wood, 981 F.2d 536 (1992), citing, United States v. Mendenhall, 446 U.S. 544, 554 (1980).

The analysis of whether a show of authority has occurred takes into account all the objective circumstances of the encounter, including the time of day, the place, the officer's tone of voice, whether the officer displayed a weapon or handcuffs, wore a uniform, touched the individual without permission, or threatened or physically intimidated him. United States v. Lewis, 921 F.2d 1294, 1297 (D.C. Cir. 1990); California v. Hodari D., 111 S.Ct. 1547 (1991). A hearing in this matter will establish that the encounter between the defendant and the officers was reasonable.  Therefore, because the officers neither applied physical force to the defendant nor demonstrated a sufficient show of authority to constitute a seizure, the defendant's contention that he was seized by the officers must fail.

Pursuant to Terry v. Ohio, 392 U.S. 1 (1968), a police officer may conduct a protective "frisk" for weapons if he has a reasonable articulable suspicion that the suspect may be armed or possesses contraband. The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence. Adams v. Williams, 407 U.S. 143, 146 (1972). An officer may conduct a search for weapons if: [H]e has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonable prudent man in the circumstances would be warranted in the

belief that his safety or that of others was in danger. United States v. Reid, 997 F.2d 1576 (D.C. Cir. 1993).  As the numerous cases considering the bounds of Terry articulate, a determination of the reasonableness of a frisk entails a balancing of the competing interests of the government in protecting its officers and intrusions into the lives of individuals in each particular factual setting. Weighing the intrusion into the defendant's privacy rights in this case against the police officers' concerns for their safety, the officers acted reasonably under the circumstances, given the reputation of the defendant as an armed individual, his repeated placing of his right hand in his pants pocket, which was the very location where the officers observed a bulge, and his nervousness.

Articulable suspicion is substantially less than probable cause, but more than a mere hunch or generalized suspicion.  United States v. Sokolow, 490 U.S. 1 (1989) (some minimal level of objective justification).  Even acts that viewed in isolation are innocent can, in combination, amount to articulable suspicion. See United States v. Arvizu, 534 U.S. 266 (2002).  The officers lawfully seized the drugs from defendants' Richards and Miles. Contraband (other than weapons) discovered during a legal Terry search may be seized without a warrant if it falls under the "plain view" or "plain touch" exceptions. See, Michigan v. Long, 463 U.S. 1032 (1983); Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130 (1993). In essence, police have the authority to seize any contraband which is immediately recognized as such while conducting a Terry frisk.

In Dickerson, the Supreme Court found that the "plain view" doctrine established in Michigan v. Long, supra, "has an obvious application by analogy to cases in which an officer discovers contraband through the sense of touch during an otherwise lawful search." 113 S. Ct. at 2137. The Court explained that: If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no

invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context. The Court explained further that in order for an object felt during a Terry search to be immediately apparent to an officer as contraband, there must be immediate probable cause for the officer's belief that the object is contraband. Id, see United States v. Ashley, 37 F.3d 678, 680-681 (D.C. Cir. 1994)(Court upheld seizure of drugs under plain touch doctrine because it was immediately apparent to the officer that the object inside of the defendant's underwear was crack cocaine).

In this case, when the police felt the objects on defendants Richards and Miles, they immediately knew from their training and experience that the objects were crack cocaine. Therefore, the police had probable cause to seize the suspected narcotics.

Based on all the evidence available to the police even prior to September 26, 2006, the police had probable cause to arrest Defendants Richards, Miles and Fleming. Police do not always need a warrant before making an arrest. The Fourth Amendment generally permits police to make warrantless arrests upon probable cause for misdemeanors committed in their presence and for any felony. United States v. Watson, 423 U.S. 411 (1976); see Atwater v. City of Lago Vista, 532 U.S. 318 (2001) (Fourth Amendment does not forbid warrantless arrests for minor crimes such as seatbelt violations committed in officer's presence). In fact, the Fourth Amendment permits warrantless arrests for misdemeanors committed outside of the presence of the police as well. See, e.g., Barry v. Fowler, 902 F.2d 770 (9th Cir. 1990). The subjective motivations of the police in making an arrest (or stop) are irrelevant; the test is whether the facts known to the police established probable cause (or reasonable articulable suspicion) as an objective matter. Whren v. United States, 517 U.S.

806 (1996); see also Devenpeck v. Alford, 125 S. Ct. 588 (2004).  But whether there is probable cause to arrest is viewed from the perspective of the police officer.  Mann v. United States, 283 A.2d 28, 30 (D.C. 1971).  The question is whether officers in the particular circumstances, conditioned by their observation and information, and guided by their experience, reasonably could have believed that a crime had been committed.  Id. That assessment turns on the totality of the circumstances. Illinois v. Gates, 462 U.S. 213.  Furthermore, probable cause (or reasonable articulable suspicion) is assessed based on the collective knowledge of the police.  E.g., McFerguson v. United States, 770 A.2d 66 (D.C. 2001); In re M.E.B., 638 A.2d 1123 (D.C. 1993).

After making a valid arrest, police may make a full search of the arrestee as well as the area that was under the arrestee's personal control at the time of arrest.  Chimel v. California, 395 U.S. 752, 763 (1969); United States v. Holmes, 385 F.3d 786 (D.C. Cir. 2004); Wesley v. United States, 293 F.3d 541 (D.C. Cir. 2002);  United States v. Abdul-Saboor, 85 F.3d 664 (D.C. Cir. 1996); Young v. United States, 670 A.2d 903 (D.C. 1996).  Searches incident to arrests made when defendants are in an automobile extend to the entire passenger compartment.  New York v. Belton, 453 U.S. 454 (1981).  The police may search a car incident to the arrest of an occupant or a "recent occupant" of the car.  See Thornton v. United States, 541 U.S. 615 (2004) (defendant had just exited car and was next to it when search occurred).  Where police are lawfully searching a car incident to arrest, they may  order all passengers out of the car.  United States v. Harris, 617 A.2d 189 (D.C. 1992).  The police may not search incident to issuing a traffic citation.  Knowles v. Iowa, 525 U.S. 113 (1998).

Searches incident to arrest need not precisely coincide with the timing of the arrest.  See, e.g., United States v. Edwards, 415 U.S. 800 (1974) (search incident to arrest permissible under circumstances even though occurred ten hours after arrest); Rawlings v. Kentucky, 448 U.S. 98, 111 (1980) (search preceded formal arrest, but occurred at time when police had probable cause to arrest); United States v. Cutchin, 956 F.2d 1216 (D.C. Cir. 1992); Minnick v. United States, 607 A.2d 519 (D.C. 1992).  Where time passes between the defendant's apprehension and the search incident to arrest, issues may arise about the reasonableness of the search of the object or area in question.  See United States v. Abdul-Saboor, 85 F.3d 664 (D.C. Cir. 1996) (searched place must be "conceivably accessible" to defendant at time of search); Young v. United States, 670 A.2d 903 (D.C. 1996) (question is whether events after arrest make search incident to arrest unreasonable).  Searches incident to a lawful arrest may violate the Fourth Amendment if carried out in an unreasonable manner, i.e., if they shock the conscience.  Washington v. United States, 594 A.2d 1050 (D.C. 1991).

The evidence seized from the persons of defendants Richards and Miles would have inevitably been discovered since they both were the subject of an ongoing undercover investigation.  The police had made previous "hand-to-hand" purchases from defendants Richards, Miles and Fleming too.  Under the inevitable discovery doctrine, evidence which the police inevitably would have discovered through independent lawful means need not be suppressed simply because an unlawful means turned up the evidence first.  See Nix v. Williams, 467 U.S. 431 (1984); United States v. Clipper, 973 F.2d 944 (D.C. Cir. 1992); United States v. Gale, 952 F.2d 1412 (D.C. Cir. 1992); Hilliard v. United States, 638 A.2d 698 (D.C. 1994); Spinner v. United States, 618 A.2d 176 (D.C. 1992); District of Columbia v. M.M., 407 A.2d 698 (D.C. 1979).  This doctrine can only be

applied where a factual determination is made that the lawful means of investigation would inevitably have turned up the evidence in question. United States v. $639,558, 955 F.2d 712 (D.C. Cir. 1992). Accordingly, the evidence seized from defendants Richards' and Miles' persons should be properly admitted into evidence at trial.

Moreover, even in criminal trials, excluded evidence may be admitted for the limited purpose of impeaching the defendant. When a defendant testifies on direct, or on cross-examination reasonably suggested by the defendant's direct testimony, in a way which is inconsistent with illegally obtained evidence that has been suppressed, that evidence may be introduced for the limited purpose of impeaching the defendant. United States v. Havens, 446 U.S. 620 (1980); Walder v. United States, 347 U.S. 62 (1954); Ware v. United States, 579 A.2d 701 (D.C. 1990). The government may not, however, ask questions during cross-examination solely for the purpose of leading the defendant into saying something which it could then impeach with illegally obtained evidence. Nor may impeachment evidence of this type be introduced as substantive evidence. James v. Illinois, 493 U.S. 307 (1990). The impeachment is limited to statements or testimony of the defendant; the government generally may not impeach other defense witnesses with illegally obtained evidence. Id.

**Defendant Miles' Spontaneous and Mirandized Statements are Admissible**

In this case, the defendant Miles' initial statements made to the police out on the public street that she had drugs on her person were spontaneous, thus Miranda's safeguards do not apply. Miranda protections extend only to those persons who are not only in custody, but also subject to interrogation. A hearing on this matter will establish that defendant Miles spontaneously stated that she had drugs on her person. Miranda v. Arizona, 384 U.S. 436 (1966).

Later, having waived her <u>Miranda</u> rights in writing, the defense contends that such a waiver, if it occurred, was not knowing and voluntary. When the validity of a waiver of <u>Miranda</u> rights is challenged, the government is required to prove that the waiver was voluntary by a preponderance of the evidence. <u>Colorado v. Connelly</u>, 479 U.S. 157, 168 (1986). Although the validity of the waiver is to be determined on a case-by-case basis by examining the totality of the circumstances, <u>North Carolina v. Butler</u>, 441 U.S. 369, 374-375 (1979); <u>United States v. McNeil</u>, 433 F.2d 1109, 1112 (D.C. Cir. 1969), "[a]n express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of the waiver...." <u>Butler</u>, 441 U.S. at 374-375. Here, the evidence will show that the defendant signed an express written waiver of her <u>Miranda</u> rights, prior to being questioned. <u>See</u> Appendix II. "The administration of proper <u>Miranda</u> warnings, followed by a written waiver of the rights described in those warnings, will usually go far toward demonstrating that a decision to speak is not compelled. If the written waiver is promptly followed by an actual confession, the likelihood that the waiver was valid is often further enhanced." <u>United States v. Yunis</u>, 859 F.2d 953, 961 (D.C. Cir. 1988) (<u>citations</u> <u>omitted</u>).

Moreover, in order to show that a waiver of <u>Miranda</u> rights was involuntary, there must be some evidence of governmental coercion.

> The sole concern of the Fifth Amendment, on which <u>Miranda</u>, is based, is governmental coercion. Indeed, the Fifth Amendment privilege is not concerned "with moral and psychological pressures to confess emanating from other than official sources. The voluntariness of a waiver of this privilege has always depended on the absence of police overreaching, not on "free choice" in any broader sense of the word.

<u>Connelly</u>, 479 U.S. at 170 (<u>quoting</u> <u>Oregon v. Elstad</u>, 470 U.S. 298, 305 (1985). Here, there are no allegations of governmental overreaching that would provide the basis for suppression.

A statement is voluntary for purpose of due process so long as the statements are "the product of an essentially free and unconstrained choice by its maker." Schneckloth v. Bustamonte, 412 U.S. 218, 225-26 (1973) (citing Columbe v. Connecticut, 367 U.S. 568, 602 (1961)). "Absent police conduct casually related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." Connelly, 479 U.S. at 163-64. There is no indication of such conduct in this case. Moreover, even if there were, there is no indication in this case that under the totality of the circumstances, Lego v. Twomey, 404 U.S. 477, 489 (1972) (government has burden of establishing under preponderance of the circumstances that the confession was voluntary), defendant's will was overborne. See Rogers v. Richmond, 365 U.S. 534, 544 (1961) (government conduct must be "such as to overbear [a suspect's] will to resist and bring about confessions not freely self-determined").

To determine whether a statement is voluntarily made, the court must examine the totality of the circumstances to determine whether an individual's "will has been overborne and his capacity for self-determination been critically impaired." Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973); Harris v. Dugger, 874 F.2d 756, 759-62 (11th Cir.), cert. denied, 493 U.S. 1011 (1989) (confession voluntary even though defendant in forearm cast and handcuffed during six-hour interrogation); United States v. Leon Guerrero, 847 F.2d 1363 (9th Cir. 1988) (promises that cooperation would be communicated prosecutors insufficient to overcome will); United States v. Yunis, 859 F.2d 953, 961 (1988) (defendant's seasickness, his uncomfortably hot room, and his unfamiliarity with American legal culture not a legally adequate basis for concluding that confession was involuntary); United States v. Pelton, 835 F.2d 1067 (4th Cir. 1987), cert. denied, 486 U.S. 1010 (1988) (FBI agent's assertion that would launch full-scale investigation if defendant did not cooperate

not sufficient to render statements involuntary).  Testimony at a pre-trial hearing in this case would demonstrate that the statement made by the defendant was voluntary.

Clearly here, where defendant is a mature woman who has sufficient familiarity with the criminal justice system, based on her numerous prior charges and prior criminal convictions, she clearly understood her rights.  There is no basis for the suppression of defendant's statements.

**Motion for Early Discovery/Disclosure Witness**

The defendants in this case have been indicted on criminal charges in connection with the distribution of cocaine and cocaine offenses in the District of Columbia.  The defendant has filed a motion asking the Court to compel the government to disclose to defense counsel the name of the witnesses who dealt with the defendant and make him available for an interview.

In assessing the defendant's claim the government suggests that it is first necessary to address what the government has provided to the defendant concerning these witnesses.  At a very early date following the return of the first Indictment in this case we provided the defendant with copies of audio and video tapes relating to the events charged (and uncharged) in the Superseding Indictment.

Rule 16(a)(2) of the Federal Rules of Criminal Procedure specifically excludes from pretrial discovery:

> (1) reports, memoranda, or other internal government documents made by the attorney for the government or other government agents in connection with the investigation or prosecution of the case, and

> (2) statements made by government witnesses except as provided by the Jencks Act (18 U.S.C. s 3500).

Thus, written or oral statements of witnesses, including cooperating witnesses, are not discoverable under Rule 16.  United States v. Fearn, 589 F.2d 1316 (7th Cir. 1978), United States v. Cook; 530

F.2d 145 (7th Cir. 1976), cert. denied, 426 U.S. 909 (1977). Rule 16(b)(2) provides similar

protection to defense witnesses and Rule 16(a)(3) extends similar protection to statements made

before the grand jury except as provided in Rules 6, 12(I) and 16(a)(1)(A) of the Federal Rules of

Criminal Procedure.

Rule 16 does not mandate the disclosure of the names of witnesses who are not experts.

Weatherford v. Bursey, 429 U.S. 545 (1977); United States v. Bello-Perez, 977 F.2d 664 (1st Cir.

1992); United States v. Reis, 788 F.2d 54 (1st Cir. 1986); United States v. Colson, 662 F.2d 1389

(11th cir. 1981); United States v. Sukumolachen, 610 F.2d 685 (9th Cir. 1980); United States v.

Patton, 578 F.2d 701 (8th Cir.), cert. denied, 439 U.S. 964 (1978); United States v. Bolden, 514 F.2d

1301 (D.C. Cir. 1975); United States v. Baca, 494 F.2d 424 (10th Cir. 1974), United States v.

Anderson, 481 F.2d 685 (4th Cir. 1973); United States v. Hancock, 441 F.2d 1285 (5th Cir.), cert.

denied, 404 U.S. 833 (1971); United States v. Persico, 425 F.2d 1375 (2d Cir.), cert. denied, 400

U.S. 869 (1970); United States v. Conder, 423 F.2d 904 (6th Cir.), cert. denied, 400 U.S. 958 (1970).

Indeed, attempts to amend Rule 16 to compel the disclosure of the names of prospective

witnesses by either side have been rejected by Congress. H.R. Conf. Rep. No. 414, 94th Cong., 1st

Sess. 12 (1975). The conference report accompanying the 1975 amendments to the Rules of

Criminal Procedure notes:

> A majority of the Conferees believe it is not in the interest of the effective administration of
> criminal justice to require that the government or the defendant be forced to reveal the names
> and addresses of its witnesses before trial. Discouragement of witnesses and improper
> contacts directed at influencing their testimony, were deemed paramount concerns in the
> formation of this policy.

Senator McClellan, in his remarks on the Senate floor regarding the 1975 amendments to the

Federal Rules of Criminal Procedure explained that:

The exposure of witnesses to intimidation and reprisals, moreover, has another aspect in terms of its predictably chilling effect on the willingness of people to come forward and testify in serious felony cases. Obtaining the public's cooperation with law enforcement is a serious problem. Anyone who has been a witness knows that it is a real sacrifice and often a terrifying experience to cooperate and testify in our criminal system, although it is a burden many witnesses are more than willing to assume. The problem is particularly acute in the Federal Government's more important cases which involve prosecution in organized crime and vice, political corruption, narcotics pushing, and large-scale criminal enterprises. These are areas in which the Federal Government has taken on a singular responsibility for law enforcement.

Cong. Rec., S12876-12879 (July 1, 1975).

While Rule 16 does not compel disclosure of the identities of government witnesses, the Supreme Court in Roviaro v. United States, 353 U.S. 53 (1957), and its progeny made it clear that a defendant is not necessarily precluded from obtaining this information. In Roviaro the defendant sought the identity of a government informant who was an active participant in the narcotics transaction for which the defendant was tried and convicted. The government resisted the disclosure of the informant's identity, relying on the informant's privilege recognized by the Court in Scher v. United States, 305 U.S. 251 (1938). The Supreme Court held that fundamental fairness required that the informer's privilege give way when the informant's testimony or identity is relevant to the defense or essential to a fair determination of the cause. Roviaro, 353 U.S. at 60-61.

But in Roviaro the government was seeking to protect, by the informant privilege, the identity of an individual who was a direct witness to the charged events, and whom the government had no intention of calling as a witness. In the instant case, the defendant is seeking the name of a person the Government has always intended to call as a witness. We sought and obtained the indictment of a distribution of heroin to that cooperating witness. The Government's position here is totally inapposite to that addressed by the Court in Roviaro. Rather, defendant here seeks to

discover the Government's witnesses, that is, a person the government intends to call in the proof of its case.  To the extent that it exists and that the defendant is entitled, the Government will provide to the defendant any information about the confidential cooperating witness for impeachment required under Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972), at the same time it discloses Jencks material, so that the defendant will have any such information to use during cross-examination.  Finally, the confidential cooperating witness is expected to provide inculpatory evidence regarding the defendant, not exculpatory.

While the disclosure of the identity of the Government's witnesses is within the discretion of the Court, this Circuit has set a high standard which the defense must meet to compel discovery of government informants.  United States v. Warren, 42 F.3d 647, 654-55 (D.C. Cir. 1994); United States v. Skeens, 449 F.2d 1066, 1070 (D.C. Cir. 1971); United States v. Harflinger, 436 F.2d 928 (8th Cir. 1970), cert. denied, 402 U.S. 973 (1971).  It is incumbent upon the defendant to establish that the identity of a witness is necessary to his defense.  See United States v. Khosravi, 733 F. Supp. 137, 138 (D.D.C. 1990) (defendant charged with narcotics conspiracy not entitled to the identity of an informant who arranged the meeting between defendant, undercover agent and co-conspirator). In order to justify the disclosure of the informants' identities in this case, the defendant must make a particularized showing that such a disclosure is both material to the preparation of his defense and reasonable in light of the circumstances.  The defendant has failed to establish a sufficient need for the disclosure of witness's identity.  United States v. Sclamo, 578 F.2d 888, 889 (1st Cir. 1978).  The

defendant's claim for disclosure is based upon "'mere speculation that the informer might possibly be of some assistance is not sufficient to meet [defendant's] burden.'" <u>United States v. Edelin</u>, 128 F.Supp.2d 23, 34 (D.D.C. 2001) (quoting <u>United States v. Mangum</u>, 100 F.3d 164, 172 (D.C. Cir.1996)).

Furthermore, one of the most relevant factors to be considered by the Court is the risk disclosure may pose to the witnesses. <u>United States v. Cannone</u>, 528 F.2d 296, 301 (2d Cir. 1975); <u>Edelin</u>, 128 F.Supp. at 33. This Court is well-aware of the increase in witness intimidation and direct actions taken to kill or harm witnesses in similar cases involving the sale of drugs. In the absence of any countervailing "particularized need" on the part of the defendant, the identity of the cooperating witness should be treated as that of every other government witness and should not be disclosed.

**The Defendants in this Case Should Not Be Severed Apart from Each Other**

In <u>Bruton v. United States</u>, 391 U.S. 123, 188, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the United States Supreme Court held that a defendant is deprived of his rights under the Confrontation Clause when his codefendant's incriminating confession is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant. However, "The decision to sever cases is committed to the sound discretion of the trial court. Defendant Richards asserts that the admission at his trial of defendant Miles' statements which implicate him will violate his Confrontation Clause rights under <u>Bruton</u>. However, Bruton has no application here, because the statements are admissible as statements against penal interest.

In <u>Bruton</u>, the government sought to admit the codefendant's confession only against the codefendant, such that, as to the defendant, the statement was inadmissible hearsay. In finding that

the admission of this statement violated the Confrontation Clause, <u>Bruton</u> expressly declined to state an opinion as to whether its rule would apply to those cases where a "recognized exception to the hearsay rule" would have otherwise permitted admission of the statement. 391 U.S. at 128 n.3. In such cases, e.g., where the statements are admissible as statements against penal interest, Courts have repeatedly recognized that if that statements satisfied a recognized hearsay exception based on the statements' presumed reliability, that reliability in turn would satisfy the concerns of the Confrontation Clause. Thus, in such a case, a trial court does not abuse its discretion in denying a severance motion on <u>Bruton</u> grounds. <u>United States v. Gibson</u>, 409 F.3d 325, 337-38 (6th Cir. 2005) (holding constitutionally admissible a non-testifying codefendant's non-testimonial statement implicating the accused)); see also <u>United States v. Hamilton</u>, 19 F.3d 350, 357 (7th Cir.) (upholding denial of severance on Bruton grounds where codefendant's statement was properly admitted under Fed. R. Evid. 804(b)(3) (hearsay exception for statements against interest)), cert. denied, 514 U.S. 986 (1994). Thus, defendant Richards has not demonstrated manifest prejudice in a joint trial, so as to establish an abuse of discretion in the trial court's denial of severance.

Defendant Fleming claims that his case demands severance because his case, albeit overwhelming, is not as compelling as his coconspirators. In codefendant cases, Fed. R. Crim. P. 8(b) controls joinder of both offenses and defendants. <u>United States v. Perry</u>, 731 F.2d 985, 989 (D.C. Cir. 1984); <u>United States v. Jackson</u>, 562 F.2d 789, 793-94 (D.C. Cir. 1977). This Circuit construes Rule 8(b) broadly in favor of joinder. <u>United States v. Gibbs</u>, 904 F.2d 52, 56 (D.C. Cir. 1990) ("[T]his court . . . has repeatedly declared that joint trials may be preferred, given the heavy and increasing criminal case load in our trial courts."); <u>United States v. Perry</u>, 731 F.2d at 991; <u>Jackson</u>, 562 F.2d at 796-97; <u>United States v. Hines</u>, 455 F.2d 1317, 1334 (D.C. Cir. 1971), cert.

denied, 406 U.S. 975 (1972). In short, "a substantial public interest supports joint trial." United States v. Friedman, 445 F.2d 1076, 1082 (9th Cir.), cert. denied, 404 U.S. 958 (1971). Jackson, 562 F.2d at 796-97; Hines, 455 F.2d at 1334, cert. denied, 406 U.S. 975 (1972).

Generally, persons charged in a conspiracy should be tried together. See, e.g., United States v. Boyd, 610 F.2d 521 (8th Cir. 1979), cert. denied, 444 U.S. 1089 (1980). "Rarely, if ever, will it be improper for co-conspirators to be tried together." United States v. Stephenson, 924 F.2d 753, 761 (8th Cir. 1991). Furthermore, severance is not required or favored even when all co-conspirators are not charged in every substantive count of the indictment, Schaffer v. United States, 362 U.S. 511, 512-13 (1960); United States v. Leach, 613 F.2d 1295, 1303 (5th Cir. 1980), or when the charged co-conspirators did not participate in all phases of the conspiracy, Blumenthal v. United States, 332 U.S. 539, 556-57 (1947); Leach, 613 F.2d at 1299. There is no mandate that severance be granted if one defendant's role was smaller or less important than another's. United States v. Nersesian, 824 F.2d 1294 (2d Cir. 1987); United States v. Ianniello, 621 F. Supp. 1455, 1477-78 (S.D.N.Y. 1985), aff'd, 808 F.2d 84 (2d Cir. 1986), cert. denied, 483 U.S. 106 (1987) (fact that defendant plays minor role in a conspiracy does not entitle him to severance).

This Court has wide discretion in determining joinder. United States v. Butler, 822 F.2d 1191, 1196 (D.C. Cir. 1987). One of the main factors courts should consider in making its joinder determination is the furtherance of the judicial system's strong and legitimate interest in efficient and expeditious proceedings. United States v. Long, 905 F.2d 1572 (D.C. Cir. 1990). Joinder of counts and defendants is designed to promote judicial economy and efficiency by avoiding multiple trials, where that can be accomplished without substantial prejudice to the rights of the defendants to a fair trial. Bruton v. United States, 391 U.S. 123, 131 n.6 (1968). Factors that the court should consider

include: (1) the presentation of the same evidence; (2) testimony from the same witnesses; and (3)

the same illegal acts.  United States v. Manner, 997 F.2d 317 (D.C. Cir. 1989), cert. denied, 493 U.S.

1062 (1990); United States v. Tarantino, 946 F.2d 1384 (D.C. Cir. 1988).

All defendants are charged in the Conspiracy count and the "crack house" count of the

superseding indictment and are charged with specific counts which they committed in furtherance

of the conspiracy.  The evidence against each defendant overlaps substantially with evidence to be

presented against the codefendants.  A number of agents of the Drug Enforcement Administration,

ATF Agency, U.S. Postal Service and officers of the Metropolitan Police Department, the chemists,

a drug expert, and others, will all testify against all defendants.  Joinder will allow the Government

to present the same witnesses and the same evidence at the same trial.  Such a result as severance

for multiple trials is undesirable.  See United States v. Erfrasio, 935 F.2d 553, 570-71 (3d Cir. 1991).

In addition, the burden upon those testifying would not be "slight," as all have other obligations in

addition to making court appearances.

The defendants bear the burden of proving prejudicial joinder under Fed. R. Crim. P. 14(b).

They cannot bear that burden.  Rule 14 countenances some prejudice to a defendant from a joint trial,

and severance is not required simply because a defendant might have a better chance of acquittal if

tried separately.  United States v. Halliman, 923 F.2d 873, 884 (D.C. Cir. 1991) (citing United States

v. Manner, 887 F.2d at 324); see also United States v. Wright, 783 F.2d 10991, 1095 (D.C. Cir.

1986); United States v. Hopkins, 464 F.2d 816, 819 (D.C. Cir. 1972); United States v. Wilson, 434

F.2d 494, 501 (D.C . Cir. 1970).  In making a determination on severance, the Court must balance

the risk of prejudice to the defendant against the interest in judicial economy.  Butler, 822 F.2d at

1194.  The Court of Appeals has struck a balance in favor of joint trials.  United States v. Leonard,

494 F.2d 955, 965 (D.C. Cir. 1974).  To warrant severance, the risk of prejudice must be compelling.

United States v. Cross, 928 F.2d 1030 (11th Cir. 1991).  The test for determining "compelling

prejudice" is the jury's ability to follow the trial court's instruction and to consider separately the

evidence relating to each defendant.  Id.; see also United States v. Leavitt, 878 F.2d 1329 (11th Cir.

1989).  It is settled that when two or more defendants are charged jointly with committing a criminal

offense, there is a strong presumption that they will be tried jointly. Zafiro v. United States, 506 U.S.

534,113 S.Ct. 933, 937 (1993).  Therefore, the Defendants cannot demonstrate any prejudice to the

individual rights by a joint trial with their codefendants or with each of the stated offenses in the

indictment.

        WHEREFORE, the Government respectfully requests that all of the defendants' motions be

denied.

                                Respectfully submitted,

                                JEFFERY A. TAYLOR
                                UNITED STATES ATTORNEY
                                D.C. BAR NO. 498-610


                        By:     _____
                                MARTIN DEE CARPENTER
                                D.C. Bar. No. 431-211
                                Assistant United States Attorney
                                Organized Crime and Narcotics Trafficking Section
                                Room No. 4116
                                555 Fourth Street, N.W.
                                Washington, D.C. 20530
                                202/514-7063

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of this pleading has been mailed, postage prepaid, this 15th day of June, 2007, to counsel for Defendant Richards, Brian McDaniel, Esquire, by electronic filing kbmassociates@aol.com and by first class mail, postage prepaid, to Suite No. 506, 1211 Connecticut Avenue, Northwest, Washington, D.C. 20036, Office No. (202) 331-0793; Facsimile (202) 331-7004, and by electronic filing to:

Attorney Danielle C. Jahn
Email: dani_jahn@fd.org

Attorney Joanne D. Slaight
Email: jslaight@att.net

---

MARTIN DEE CARPENTER, Bar No. 431-211
Assistant United States Attorney
Organized Crime & Narcotics Trafficking Section
555 4th Street, N.W., Room No. 4116
Washington, D.C. 20530
(202) 514-7063

Email: martin.carpenter2@usdoj.gov